[No. 16491-4-II.   Division Two.   February 24, 1995.]

THE STATE OF WASHINGTON, *Appellant*, v. SHERYL D. KELLEY, *Respondent*.

*Christine O. Gregoire, Attorney General,* and *Thornton A. Wilson* and *Talis Merle Abolins, Assistants,* for appellant.

*Jean Marie Schiedler-Brown,* for respondent.

HOUGHTON, J. — The Department of Corrections (the DOC) appeals a summary judgment order restraining it from performing a deoxyribonucleic acid (DNA) analysis on inmate Sheryl D. Kelley's blood. The DOC contends that certain statutes transform Kelley's unclassified possessory drug crime into a class A violent felony, making her blood subject to DNA testing under RCW 43.43.754 (the DNA statute). We affirm.

## FACTS

The facts are not at issue. The parties dispute the application and interpretation of the DNA statute, which provides:

> [E]very individual convicted in a Washington superior court of a felony defined as a *sex offense* under RCW 9.94A.030(29)(a) or a *violent offense* as defined in \*RCW 9.94A.030(32) shall have a blood sample drawn for purposes of DNA identification analysis. . . . Any blood sample taken pursuant to RCW 43.43.752 through 43.43.758 shall be used solely for the purpose of providing DNA or other blood grouping tests for identification analysis and prosecution of a *sex offense* or a *violent offense*.
>
> **\*Reviser's note:** RCW 9.94A.030(32) was renumbered as RCW 9.94A.030(33) by 1990 c 3.

(Italics ours.) Former RCW 43.43.754; Laws of 1990, ch. 230, § 3. The DNA statute authorizes the DOC to draw blood for future DNA identification purposes from inmates who committed sex offenses or violent offenses.

Following Kelley's conviction of possession of a controlled substance with intent to deliver, the trial court sentenced her to 53 months of a possible 10-year maximum sentence. *See* RCW 69.50.401. Kelley had prior convictions, so the trial court could have doubled her sentence under RCW 69.50.408[1] (the doubling statute); however, the sentencing court declined to apply that statute. Kelley's possessory offense was not a violent crime.

Nonetheless, relying upon RCW 9A.20.040, the State determined to take a blood sample from Kelley, intending to perform a DNA analysis. RCW 9.94A.030(36) defines "violent offense" as "[a]ny felony defined under any law as a class A felony". The State reasoned the doubling statute automatically doubled her maximum possible sentence to 20 years and, in conjunction with RCW 9A.20.040(1),[2] converted her drug charge into a class A "violent offense" for purposes of the DNA statute.

Kelley resisted, but ultimately allowed the State to draw her blood under threat of disciplinary sanctions. She then

---

[1]RCW 69.50.408 ("Second or subsequent offenses"):

"(a) Any person convicted of a second or subsequent offense under this chapter may be imprisoned for a term up to twice the term otherwise authorized . . .."

[2]RCW 9A.20.040(1) provides that an unranked crime with a maximum sentence of 20 years or more shall be "treated as a class A felony". The full text is set forth *infra*.

brought the present action and sought to enjoin the State from performing DNA analysis on her blood. The trial court, on summary judgment motion, granted an injunction prohibiting the State from drawing, storing, or testing Kelley's blood for purposes of DNA identification analysis. The State appeals.

### ANALYSIS

This appeal challenges an order granting an injunction. Ordinarily, such an order is discretionary, is given great deference on review, and is overturned only for an abuse of discretion. *See State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *Protect the Peninsula's Future v. Clallam Cy.*, 66 Wn. App. 671, 677, 833 P.2d 406 (1992), *review denied*, 121 Wn.2d 1011 (1993). Here, however, the issues involve only questions of law, which we review de novo. *State v. Moore*, 73 Wn. App. 805, 815, 871 P.2d 1086 (1994).

The State argues the DNA statute applies to Kelley because (1) she was convicted of an unranked, nonviolent crime with a maximum sentence of 10 years; (2) her maximum potential sentence was 20 years due to the application of the doubling statute; (3) due to this sentence enhancement, her crime is treated as a class A felony under RCW 9A.20.040(1); (4) her class A felony is then equivalent to a violent offense under RCW 9.94A.030(36);[3] and (5) she is therefore a violent offender for purposes of the DNA statute.

The Legislature has explicitly limited testing under the DNA statute to crimes defined by RCW 9.94A.030 as sex or violent offenses. "Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature". *Snohomish Cy. v. Anderson*, 123 Wn.2d 151, 157, 868 P.2d 116 (1994) (quoting *Washington Natural Gas Co. v. PUD 1*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969)). Kelley's possessory offense did not involve a sexual or violent act. By

---

[3]RCW 9.94A.030 has been amended numerous times since the enactment of the DNA statute. The text is set forth *infra*.

inference, it therefore seems incorrect to term it "violent" for purposes of the DNA statute.

On the other hand, Kelley's offense could be called "violent" if it were defined as a class A felony pursuant to RCW 9.94A.030(36):

> [Violent offense means] . . . Any of the following felonies, as now existing or hereafter amended: Any felony defined under any law as a class A felony or an attempt to commit a class A felony, criminal solicitation of or criminal conspiracy to commit a class A felony, manslaughter in the first degree, manslaughter in the second degree . . ..

RCW 9.94A.030(36).[4] Kelley's offense, however, is not defined as a class A felony. Nor does the above statute explicitly list Kelley's possessory offense.[5] It thus appears from the face of this statute that Kelley's offense remains nonviolent.

The State contends, however, that Kelley's crime becomes a class A felony through the application of RCW 9A.20.040(1):

> **Prosecutions related to felonies defined outside Title 9A RCW.** In any prosecution under this title where the grade or degree of a crime is determined by reference to the degree of a felony for which the defendant or another previously had been sought, arrested, charged, convicted, or sentenced, if such felony is defined by a statute of this state which is not in Title 9A RCW, unless otherwise provided:
> (1) If the maximum sentence of imprisonment authorized by law upon conviction of such felony is twenty years or more, such felony shall be treated as a class A felony for purposes of this title;
> (2) If the maximum sentence . . . is eight years or more, but less than twenty years, such felony shall be treated as a class B felony for purposes of this title.

Although Kelley's offense is defined outside of RCW Title 9A (in Title 69), the State argues RCW 9A.20.040(1) applies to Kelley's offense because the language "In any prosecution under this title" includes all current criminal prosecutions

---

[4]While the statutory definitions of sex offense and violent offense have been renumbered several times, the relevant language has not been changed. Therefore, this opinion will refer to the relevant language in the current version of the statute.

[5]Although numerous crimes have been added to the definition of violent offense, *no* nonviolent, possessory offenses have been included.

defined under any title. For this the State relies heavily upon *State v. Stephan*, 35 Wn. App. 889, 671 P.2d 780 (1983).

In *Stephan*, Division Three of this court stated that a "felony defined outside RCW Title 9A becomes a classified crime through application of RCW 9A.20.040 and .020." *Stephan*, at 897. The *Stephan* court determined that securities fraud, an unclassified offense punishable by 10 years' imprisonment under RCW Title 21, could be classified as a class B felony under RCW 9A.20.040(2). Thus, *Stephan* interpreted the language "all prosecutions under this title" to mean that, regardless of which title defines a particular offense, "all prosecutions are 'under [RCW Title 9A]'," and RCW 9A.20.040 applies to all prosecutions. *Stephan*, at 897.

The *Stephan* court cited no authority for this proposition, noting that RCW 9A.20.040 "is not a model of clarity". *Stephan*, at 896. Although the court based its reading of the statute on principles of statutory interpretation, it noted that its reading might be problematic, because the court lacked the benefit of briefing by counsel for both sides on the issue.[6]

Kelley distinguishes *Stephan* on procedural grounds. She notes that *Stephan* did not address whether RCW 9A.20.040 may be applied in the context of administrative actions unconnected with the execution of a sentence, such as the DNA testing and data collection at issue here. We note the factual and legal contexts of the present case are also substantially different from *Stephan*, such that applying *Stephan's* approach here would produce an unexpected and inequitable result.

██ In *Stephan*, application of RCW 9A.20.040 in the securities fraud context simply enabled the court to order restitution. By contrast, applying RCW 9A.20.040 here would enable the DOC to take the blood of a nonviolent, non-sex offender for purposes of DNA testing and identifica-

---

[6]"One problem created when an issue is not presented at the trial level is readily apparent here. Mr. Stephan has not addressed the effect of RCW 9A.20.040 on RCW 21.20.400 in his appeal. This court is therefore without guidance on his view of the statute." *Stephan*, at 896 n.5.

tion, a power neither expressly granted nor apparently contemplated by the Legislature. Such a broad grant of power would implicate constitutional issues entailing careful consideration of limiting language not apparent in the statute. Hence, we decline to apply *Stephan* in this case.

Moreover, although some cases appear to apply RCW 9A.20.040 to a current prosecution,[7] the statutory language indicates this is simply incorrect. Every word, clause, and sentence of a statute should be given effect, if possible. *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 13, 810 P.2d 917, 817 P.2d 1359 (1991). Here, the words "crime" and "felony" distinguish current *crimes* from past *felonies*: "In any prosecution under this title where the grade or degree of a [current] *crime* is determined by reference to the degree of a [previous] *felony* . . . if *such felony* is defined by a statute of this state which is not in Title 9A RCW", then this statute may be used to classify that previous felony as class A, B or C. (Italics ours.) RCW 9A.20.040.

In other words, this statute classifies past felonies so that the current crime being prosecuted under RCW Title 9A may be graded. Kelley's past felonies are not at issue, and her current offense clearly is not a prosecution under Title 9A. We agree with the trial court, therefore, that RCW 9A.20.040 does not apply.

■ The State nonetheless contends that Kelley's past convictions activate the doubling statute, doubling her maximum possible sentence from 10 to 20 years. In sentencing Kelley for her possessory offense, however, the sentencing court did not apply the doubling statute to Kelley. Thus, even if we were to apply RCW 9A.20.040, in these circum-

---

[7]*See State v. Johnson*, 51 Wn. App. 836, 837, 759 P.2d 459 (RCW 9A.20.040 converts a 10-year maximum sentence into a class B felony), *review denied*, 111 Wn.2d 1008 (1988); *State v. Austin*, 39 Wn. App. 109, 110-11, 692 P.2d 206 (1984), ("VUCSA is a class C felony, RCW 9A.20.040"), *aff'd*, 105 Wn.2d 511, 716 P.2d 875 (1986); *State v. Kersteter*, 30 Wn. App. 84, 86-87, 632 P.2d 897 (1981) (court's facts refer to State's dismissing lesser charge, and filing greater charge under RCW 9A.20.040)). These cases, however, lack any reasoning or analysis regarding RCW 9A.20.040.

stances Kelley would prevail. She was actually sentenced to a maximum of 10 years; such a sentence amounts to a class B, not a class A, felony under RCW 9A.20.040(2); and a class B felony is not "violent" for purposes of the DNA statute.

This conclusion is supported by the language of RCW 9A.20.040:

> [W]here the grade or degree of a [current] crime is determined by reference to the degree of a [previous] felony . . . if *such felony* is defined by a statute of this state which is not in Title 9A RCW, . . .
>
> . . . [and i]f *the maximum sentence of imprisonment authorized by law upon conviction of such felony* is twenty years or more, *such felony* shall be treated as a class A felony for purposes of this title[.]

(Italics ours.) To apply this language, the court must determine the maximum sentence of imprisonment authorized by law upon conviction of Kelley's possessory offense. In this case, the maximum sentence *upon conviction* is 10 years. The statute does not say upon conviction and after sentence enhancements.

In sum, we conclude Kelley's possessory offense was not a violent or sexual offense for purposes of the DNA statute, because (1) RCW 9A.20.040 could not be applied to classify her current offense based upon her prosecution under RCW Title 69; and (2) even if it could be so applied, the doubling statute (RCW 69.50.408) does not operate to convert an unclassified offense punishable by a 10-year maximum sentence into a class A felony for purposes of RCW 9A.20.040.

Affirmed.

SEINFELD, C.J., and MORGAN, J., concur.